1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   FRANCES L. LANIOHAN,

11            Plaintiff,                    No. CIV S-08-0738 DAD

12       vs.

13   MICHAEL J. ASTRUE,                     ORDER
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, defendant's motion is

19   denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the

20   matter is remanded for further proceedings consistent with this order.

21                        **PROCEDURAL BACKGROUND**

22            In October 1998, plaintiff filed applications for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income

24   (SSI) under Title XVI of the Act, alleging disability commencing on September 8, 1997, due to

25   pain in her arms, hands, shoulders, and neck.  (Transcript (Tr.) at 27, 42.)  The applications were

26   denied initially in November 1998.  (Id.)  After they were denied upon reconsideration, a hearing

1  was held on July 26, 1999, before Administrative Law Judge (ALJ) James N. Baker.  (Tr. at 27.)

2  Plaintiff, represented at that time by attorney Gary C. Nelson, testified at the hearing, as did a

3  vocational expert.  The ALJ issued a decision on October 1, 1999, finding that plaintiff was not

4  disabled at any time through the date of the decision.[1]  (Tr. at 27-32.)

5           The court takes judicial notice of Laniohan v. Social Security, CIV S-01-0983

6  LKK PAN PS (E.D. Cal.), a case filed on May 21, 2001, in which Frances J. Laniohan,

7  proceeding pro se, sought judicial review of the Commissioner's final decision on her 1998

8  applications.[2]  (Case No. CIV S-01-0983 LKK PAN PS, Order to Show Cause filed May 7, 2002

9  (Doc. No. 15) at 1.)  On September 18, 2001, the court approved the parties' stipulation in that

10 case to remand pursuant to Sentence Six of 42 U.S.C. § 405(g).  (Id., Stip. & Order (Doc. No.

11 11).)  The basis for remand was that the cassette tape of the July 26, 1999 administrative hearing

12 could not be located.  The stipulation and order provided that the Appeals Council was to remand

13 the case to an ALJ for a new hearing and new decision.  (Id.)  On January 29, 2002, the 2001 case

14 was reopened after defendant filed an answer and a certified administrative transcript.  (Id.,

15 Answer & Admin. Tr. (Doc. Nos. 13 & 14).)  In findings and recommendations filed on March

16 28, 2003, Magistrate Judge Peter A. Nowinski found that the ALJ's determinations were

17 supported by the record and free of legal error, and recommended that plaintiff's motion for

18 summary judgment be denied and defendant's motion for summary judgment be granted.  (Id.,

19 Findings & Recommendations (Doc. No. 21).)  The findings and recommendations were adopted

20 by the assigned district judge on August 22, 2003.  (Id., Order (Doc. No. 24).)

21

22          [1] ALJ Baker found at that time that the evidence "supports a finding that the claimant has
   degenerative disk disease of the cervical spine, carpal tunnel syndrome, and a tear of the superior
23 labial margin of her right shoulder, impairments that cause significant vocationally relevant
   limitations."  (Tr. at 28.)  The ALJ determined that plaintiff has a residual functional capacity for
24 light work, reduced by inability to push and pull overhead with her right arm, reach overhead
   with her right arm, or climb ladders, ropes, or scaffolds.  (Tr. at 32.)

25

26          [2] A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman,
   803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

On May 1, 2002, plaintiff filed new applications for DIB and SSI, again alleging onset of disability on September 8, 1997, because of severe pain in her neck, shoulders, hands, arms, legs, and back. (Tr. at 114-18, 126-35.) The applications were denied initially in August 2002 and upon reconsideration in April 2003. (Tr. at 36-38, 52-63.) On November 12, 2003, a hearing was held before ALJ William C. Thompson, Jr. (Tr. at 64, 428-59.) Plaintiff, then represented by Ann M. Cerney, Esq., appeared at the hearing and testified, as did a vocational expert. (Tr. at 428-29.) In a decision issued on February 19, 2004, the ALJ found plaintiff not disabled.[3] (Tr. at 42-48.) On April 29, 2005, the Appeals Council granted plaintiff's request for review, vacated the hearing decision, and remanded the case for a new decision.[4] (Tr. at 103-05.)

At the remand hearing held on March 28, 2006, plaintiff, again represented by attorney Ann Cerney, appeared and testified. (Tr. at 460-97.) A vocational expert also testified. (Id.) On July 8, 2006, the ALJ issued a second unfavorable decision. (Tr. at 15-22.) The following findings were entered:

> 1. The claimant met the insured status requirements of the Social Security Act only through December 31, 2002.
>
> 2. The claimant has not engaged in substantial gainful activity since September 8, 1997, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

/////

---

[3] ALJ Thompson found that plaintiff's bilateral carpal tunnel syndrome and elbow pain, right shoulder pain, neck pain, right groin pain, asthma, and depression were severe impairments. (Tr. at 47.) The ALJ determined that plaintiff had the residual functional capacity to perform a range of light work in that she "is able to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds," "can sit for about 6 hours and stand and walk for about 6 hours in an 8-hour workday," "is precluded from repetitive use of both arms," "is limited to occasional bending, stooping, twisting, squatting, kneeling, crawling, and climbing," "must avoid more than occasional exposure to heights, moving machinery, dust, and fumes," and, "[b]ecause of her depression, Claimant is limited to simple instructions and one and two-step processes." (Id.)

[4] The Appeals Council noted inconsistent findings related to the ALJ's determination that plaintiff could perform her past relevant work as a security guard. (Tr. at 104-05.) The Appeals Council directed the ALJ to give further consideration to plaintiff's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. (Tr. at 105.)

3.  The claimant has the following severe impairments: carpal tunnel syndrome, diabetes mellitus, and asthma (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry forty pounds occasionally and twenty pounds frequently.  There is no limitation on the ability to sit, stand or walk.  She should avoid hazards such as unprotected heights or moving machinery.  She should not be exposed to excessive amounts of smoke, dust, fumes or other respiratory irritants.  The claimant should perform power gripping activities only occasionally.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on June 28, 1953 and was forty-four years old on the alleged disability onset date, which is defined as a "younger individual age 18-44"[] (20 CFR 404.1563 and 416.963). During the pendency of this claim and prior to her date last insured, the claimant attained the age of 50 and is now regarded as "closely approaching advance[d] age."

8.  The claimant has a "marginal" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from September 8, 1997 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 15-23.)

/////

On February 8, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's July 8, 2006 decision.  (Tr. at 5-8.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 7, 2008.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal

/////

1  Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2  The five-step process has been summarized as follows:

3          Step one:  Is the claimant engaging in substantial gainful activity?
           If so, the claimant is found not disabled.  If not, proceed to step
4          two.

5          Step two:  Does the claimant have a "severe" impairment?  If so,
           proceed to step three.  If not, then a finding of not disabled is
6          appropriate.

7          Step three:  Does the claimant's impairment or combination of
           impairments meet or equal an impairment listed in 20 C.F.R., Pt.
8          404, Subpt. P, App. 1?  If so, the claimant is automatically
           determined disabled.  If not, proceed to step four.
9
           Step four:  Is the claimant capable of performing his past work?  If
10         so, the claimant is not disabled.  If not, proceed to step five.

11         Step five:  Does the claimant have the residual functional capacity
           to perform any other work?  If so, the claimant is not disabled.  If
12         not, the claimant is disabled.

13 Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

14         The claimant bears the burden of proof in the first four steps of the sequential

15 evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

16 sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

17 (9th Cir. 1999).

18                                   **APPLICATION**

19         Plaintiff advances the following arguments in support of her motion for summary

20 judgment or remand:  (1) the ALJ failed to articulate any reasons for not crediting the opinions of

21 multiple treating and examining sources in favor of the internally consistent opinions of

22 examining physician Dr. McIntire and mistakenly found that the record does not contain any

23 opinions from treating or examining physicians indicating that plaintiff is disabled or has

24 limitations greater than those determined by the ALJ; (2) the ALJ failed to articulate specific and

25 legitimate reasons for not crediting the 2003 and 2005 opinions of examining psychiatrist Dr.

26 Kalman, particularly since the ALJ's 2004 hearing decision specifically credited Dr. Kalman's

                                              6

1  2003 opinion; and (3) the ALJ erred in failing to find plaintiff's cervical spine condition to be a

2  severe impairment when objective MRI evidence confirmed that plaintiff suffers from

3  degenerative disk disease of the cervical spine.  These arguments are addressed below.

4  **I.  ALJ's Failure to Articulate Reasons for Not Crediting Certain Medical Opinions**

5          The weight to be given to medical opinions in Social Security disability cases

6  depends in part on whether the opinions are proffered by treating, examining, or nonexamining

7  health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

8  "As a general rule, more weight should be given to the opinion of a treating source than to the

9  opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830.  This is so because a

10 treating doctor is employed to cure and has a greater opportunity to know and observe the patient

11 as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

12 F.2d 1059, 1063 (9th Cir. 1990).

13         A treating physician's uncontradicted opinion may be rejected only for clear and

14 convincing reasons, and a treating physician's opinion that is controverted by another doctor may

15 be rejected only for specific and legitimate reasons supported by substantial evidence in the

16 record.  Lester, 81 F.3d at 830-31.  "The opinion of an examining physician is, in turn, entitled to

17 greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An

18 examining physician's uncontradicted opinion, like a treating physician's, may be rejected only

19 for clear and convincing reasons, and when an examining physician's opinion is controverted by

20 another doctor, the opinion may be rejected only for specific and legitimate reasons supported by

21 substantial evidence in the record.  Id. at 830-31.

22         In order to meet the burden of setting forth specific, legitimate reasons for giving

23 less weight to the controverted opinion of a treating or examining physician, the ALJ must set out

24 a detailed and thorough summary of the facts and conflicting clinical evidence, state his

25 interpretation of the evidence, and make specific findings.  Thomas v. Barnhart, 278 F.3d 947,

26 957 (9th Cir. 2002) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The ALJ

1   must explain why any significant probative evidence has been rejected and must reach a decision

2   supported by substantial evidence.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003);

3   Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

4             "The opinion of a nonexamining physician cannot by itself constitute substantial

5   evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

6   physician."  Lester, 81 F.3d at 831 (emphasis in original).  See id. at 831-32 (holding that the

7   ALJ's rejection of the opinions of a treating physician and an examining psychologist was not

8   warranted where the rejection was based on a nontreating, nonexamining doctor's opinion

9   supplemented only by unsupported and unwarranted speculation that the treating and examining

10   doctors were misrepresenting the claimant's condition or were not qualified to evaluate it); Pitzer

11   v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion

12   "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating

13   or examining physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that

14   the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own

15   observation of the claimant at the hearing, did not constitute substantial evidence and did not

16   support the ALJ's decision to reject the examining physician's opinion that the claimant was

17   disabled).

18             Here, plaintiff's medical history through the date of the Commissioner's final

19   decision on July 8, 2006, spans a dozen years and includes treatment of multiple impairments.

20   Prior to December 31, 2002, her date last insured, plaintiff was diagnosed with the following

21   impairments, many of them diagnosed repeatedly:  asthma in 1991; myofascial pain syndrome

22   involving plaintiff's neck and arms due to a work injury in 1994; bilateral carpal tunnel

23   syndrome first diagnosed in 1994 based on nerve conduction studies; moderately advanced

24   degenerative disc disease diagnosed in 1997 based on a cervical spine x-ray; a cervical disc bulge

25   diagnosed in 1999 based on an MRI showing a right posterolateral disc bulge extending to and

26   threatening the right anterolateral margin of the adjacent spinal cord; right shoulder strain with a

partial labral tear diagnosed in 1999 based on an MRI of plaintiff's right shoulder; right groin strain, left eye injury, and exposure to chlorine diagnosed in 1999; right shoulder impingement syndrome, cervical arthrosis, lumbago, and right elbow pain diagnosed in 2000; generalized mild inflammatory condition diagnosed in 2000; moderate cervical spondylosis, mild narrowing of the C5-6 foramen on the right, and mild disc bulges at multiple levels in 2002 based on an MRI of the cervical spine that month; chlorine-induced asthma, tennis elbow on the left side, and right lateral epicondylitis in 2002.  In 2003, plaintiff was diagnosed with adjustment disorder and depression secondary to medical condition, with a GAF of 60; the examining psychiatrist opined that the limitations assessed in his medical source statement had existed at the assessed level of severity since 1997.  Nerve conduction studies in 2005 reflected that plaintiff's carpal tunnel syndrome was slightly worse, particularly in her left wrist.  In 2005, the examining psychiatrist diagnosed mental disorder and depression due to medical condition, with a GAF of 55, and again opined that the limitations assessed in his medical source statement had existed at the assessed level of severity since 1997.

In support of his determination that plaintiff's severe impairments consist solely of carpal tunnel syndrome, diabetes mellitus, and asthma, the ALJ offers a summary of the medical evidence that acknowledges most of plaintiff's diagnoses but minimizes the diagnosed impairments and does not mention the opinions of plaintiff's treating physicians with respect to the effect of any of those impairments on plaintiff's physical or mental ability to do basic work activities.  (Tr. at 17-19.)  The ALJ's subsequent discussion of residual functional capacity is focused primarily on plaintiff's testimony and the ALJ's reasons for finding that testimony not entirely credible.  (Tr. at 19-21.)

Although the ALJ states that he considered opinion evidence, his written decision fails to demonstrate such consideration.  (Id.)  First, in perceiving plaintiff's allegations as inconsistent with the doctors' treatment records, the ALJ asserts that "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is

1  disabled or even has limitations greater than those determined in this decision." (Tr. at 20.)

2  Second, the ALJ concludes his analysis of plaintiff's residual functional capacity in the following

3  manner:

> As for the opinion evidence, I give substantial weight to the assessments of the State Agency medical consultants and consultative examiners, particularly the August 29, 2005 report of Dr. McIntire, because they are consistent with and well-supported by the weight of the evidence of record.  Further, they are rendered by physicians who are experts in evaluating the medical issues in disability claims under the Social Security Act.  I further note that the claimant's treating orthopedist, Vincent C. Leung, M.D., stated on April 5, 2005 that her diagnosis was bilateral mild to moderate carpal tunnel syndrome but can perform modified light duty.  Dr. Leung recommended continued conservative treatment and the claimant requested a prescription for "plain Tylenol Extra Strength" (B21F/9-10 [tr. at 373-74]).  This assessment supports the findings of the State Agency physician and consultant.

12  (Tr. at 20-21.)

13  Plaintiff argues persuasively that the record contains many instances in which

14  treating, examining, and nontreating, nonexamining physicians found limitations greater than

15  those determined by the ALJ.  Plaintiff's motion for summary judgment charts examples of such

16  disparities, and the court notes some of them here.  Dr. Leung, whose 2005 opinion was cited by

17  the ALJ, opined in 2005 and 2006 that plaintiff should avoid repetitive work with both upper

18  extremities, just as Dr. Porecha had opined in 2002 and Dr. Westin had opined in 2000.  (Tr. at

19  281, 330, 367, 371.)  Both of the state agency physicians opined in 2002 and 2003 that plaintiff

20  should not lift more than 20 pounds occasionally and 10 pounds frequently, could stand or walk

21  for about 6 hours in an 8-hour workday, could sit for about 6 hours in an 8-hour workday, and

22  should only occasionally climb, balance, stoop, kneel, crouch, and crawl; in addition, the second

23  state agency physician opined that plaintiff should never climb ladders, ropes, and scaffolds.  (Tr.

24  at 185-87, 239-41.)  Dr. Porecha and the state agency physicians opined that plaintiff should

25  avoid reaching overhead.  (Tr. at 187, 330.)  All of these limitations are greater than those

26  determined by the ALJ.

Except for the environmental limitations, plaintiff's residual functional capacity as determined by the ALJ matches the limitations contained in the final opinions of examining physician Steve McIntire, M.D., a board-certified neurologist who examined plaintiff on three dates and issued four opinions.

When Dr. McIntire performed his first neurologic evaluation of plaintiff on July 26, 2002, plaintiff's chief complaint was "[w]hole body pain." (Tr. at 175.) The only medical record available to Dr. McIntire at that time was an otherwise unidentified clinic report, which he reviewed. (Id.) Based on that clinic report, "a vague history" by plaintiff, and a physical and neurological examination of plaintiff, Dr. McIntire opined that plaintiff had no functional limitations on a neurological basis. (Tr. at 175-78.)

On March 11, 2003, Dr. McIntire performed his first orthopedic evaluation of plaintiff, whose chief complaint at that time was "[s]houlder injury." (Tr. at 192.) The only medical record available to Dr. McIntire at that time was his prior evaluation. (Id.) Based on "a very different history" given by plaintiff and his physical and orthopedic examination of plaintiff, Dr. McIntire again opined that plaintiff had no functional limitations. (Tr. at 192-94.)

Dr. McIntire examined plaintiff again on August 29, 2005, and prepared separate neurologic and orthopedic evaluations, accompanied by separate medical source statement forms.[5] (Tr. at 344-51, 353-61.) Plaintiff's chief neurologic complaint at that time was carpal tunnel syndrome, and her chief orthopedic complaints were right shoulder injury, tennis elbow, and neck and back pain. (Tr. at 344, 353.) Once again, Dr. McIntire had been provided with no medical records to review. (Id.) He stated that it would be worthwhile to review all the relevant evidence, noting in particular the EMG nerve conduction study done in February 2005 and the

---

[5] It appears that two separate evaluations and forms were prepared in order to better respond to the disability analyst's separate consultation requests, each of which lists very specific questions to be answered by the contracting consultant. (Tr. at 352, 362.) Although plaintiff has argued that the two opinions dated August 29, 2005, are internally inconsistent, the court does not find them so when considered as separate evaluations of plaintiff's neurologic and orthopedic conditions.

1    cervical and lumbar x-rays and MRI's plaintiff told him about. (Id.)  In his neurologic

2    evaluation, Dr. McIntire opined that plaintiff should not engage in more than occasional power

3    gripping activities with her hands and that her overall lifting and carrying should be limited to

4    not more than 20 pounds frequently and 40 pounds occasionally; he found no other functional

5    limitations suggested by the neurologic examination.  (Tr. at 347-51.)  In his orthopedic

6    evaluation, Dr. McIntire opined that plaintiff's overall lifting and carrying should be limited to

7    not more than 20 pounds frequently and 40 pounds occasionally; he found no other functional

8    limitations suggested by the orthopedic examination.  (Tr. at 357-61.)

9            Far from being "consistent with and well-supported by the weight of the evidence

10   of record," as the ALJ found, Dr. McIntire's opinions appear to contradict the opinions of

11   numerous treating and examining physicians, and even the opinions of the state agency

12   physicians, with regard to plaintiff's limitations.  Dr. McIntire's opinions were based on isolated

13   examinations of plaintiff without any opportunity to review the evidence of record.  For this

14   reason, Dr. McIntire's opinions are insufficient to contradict the numerous treating and

15   examining physicians' opinions.  In the absence of clear and convincing reasons for rejecting the

16   opinions of plaintiff's treating physicians and the opinions of other physicians who examined

17   plaintiff, the ALJ erred in his treatment of the medical opinions on file.  Even if the opinions of

18   the treating physicians and other examining physicians are controverted to some degree by Dr.

19   McIntire's opinions, the ALJ has not provided specific and legitimate reasons supported by

20   substantial evidence in the record for giving greater weight to Dr. McIntire's opinions.

21           The court finds that plaintiff is entitled to summary judgment on her claim that the

22   ALJ failed to articulate a proper reason for favoring the opinions of Dr. McIntire over the

23   opinions of plaintiff's treating physicians and other examining physicians.  On remand, new

24   orthopedic and neurologic opinions should be obtained from Dr. McIntire, or from another

25   examining physician, and that physician must be provided with plaintiff's complete medical

26   record for review.  After developing the record further in this way, the ALJ must reevaluate the

1 opinion evidence, explain the weight given to each physician's opinion, and explain why any

2 significant probative evidence has been rejected.

3 **II. ALJ's Failure to Articulate Legitimate Reasons for Rejecting Dr. Kalman's Opinions**

4        Les P. Kalman, M.D., Psy.D., M.F.C.C., performed psychiatric evaluations of

5 plaintiff on September 15, 2003, and September 3, 2005.  On each occasion, Dr. Kalman

6 prepared a report and a medical source statement concerning the nature and severity of plaintiff's

7 mental impairment.  (Tr. at 313-19, 389-96.)  On each occasion, Dr. Kalman also itemized the

8 medical records that were provided to him in connection with his evaluation and stated that he

9 considered the records.  (Tr. at 319, 392.)  Dr. Kalman's opinions constitute the only opinion

10 evidence in the file regarding plaintiff's mental impairments.

11        In his 2003 medical source statement, Dr. Kalman found plaintiff moderately

12 limited in the ability to understand and remember detailed instructions or tasks which may or

13 may not be repetitive; to carry out such instructions; and to maintain attention and concentration

14 for extended periods.  He found her mildly limited in the ability to carry out short and simple

15 instructions or tasks; to respond appropriately to expected or unexpected changes in the work

16 setting; to travel in unfamiliar places and/or use public transportation; and to set realistic goals or

17 to make plans independently of others.  He opined that plaintiff's level of impairment would

18 increase with a demand for precision, a need to make quick and accurate, independent decisions

19 in problem solving on a consistent basis, or a need to make accurate, independent decisions in

20 problem solving on a consistent basis.  He also opined that her impairments were sufficiently

21 severe that she would be unable to complete a workday, if employed in a full-time job, more than

22 three or four times per month.  (Tr. at 313-16.)

23        In his 2005 medical source statement, Dr. Kalman found plaintiff moderately

24 limited in the ability to understand and remember detailed instructions or tasks which may or

25 may not be repetitive and to carry out detailed instructions which may or may not be repetitive.

26 He found her mildly limited in the ability to maintain attention and concentration for extended

1   periods; to complete a normal workday and workweek without interruptions from

2   psychologically based symptoms and to perform at a consistent pace without an unreasonable

3   number and length of rest periods; and to accept instructions and respond appropriately to

4   criticism from supervisors.  He opined that plaintiff's level of impairment would increase with

5   such factors as unruly, demanding or disagreeable customers even on an infrequent basis;

6   production demands or quotas; a demand for precision; a need to make quick and accurate,

7   independent decisions in problem solving on a consistent basis; or a need to make accurate,

8   independent decisions in problem solving on a consistent basis.  He opined again that her

9   impairments were sufficiently severe that she would be unable to complete a workday, if

10  employed in a full-time job, more than three or four times per month.  (Tr. at 393-96.)

11              The ALJ acknowledged that plaintiff suffers from depression but declined to

12  credit the limitations assessed by Dr. Kalman for the following reason:

13              I emphasize that the claimant underwent these examinations not in
             an attempt to seek treatment for symptoms, but rather, through
14           attorney referral and in connection with an effort to generate
             evidence for the current appeal.  Further the doctor was presumably
15           paid for the report.  Although such evidence is certainly legitimate
             and deserves due consideration, the context in which it was
16           produced cannot be entirely ignored.  In light of the foregoing,
             however, the fact that the claimant has not sought or received any
17           mental health treatment for her alleged depression calls into
             question the limitations assessed by the examiner.  Accordingly, I
18           conclude that the claimant's alleged depression does not rise to the
             level of a severe impairment.

19

20  (Tr. at 19.)

21              "'[I]t is a questionable practice to chastise one with a mental impairment for the

22  exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465

23  (9th Cir. 1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

24  Moreover, the Ninth Circuit has found it "common knowledge that depression is one of the most

25  under reported illnesses in the country because those afflicted often do not recognize that their

26  condition reflects a potentially serious mental illness."  Id.

14

1       Here, plaintiff testified at the administrative hearing in 2003 that before Dr.

2    Kalman evaluated her, no other doctor had ever discussed her feelings and emotions with her, no

3    other doctor had never asked her about her emotions and how her medical impairments were

4    affecting her emotions, and she did not know that depression was a disease.  (Tr. at 449.)  At the

5    remand hearing in 2006, plaintiff testified that she was not receiving any kind of medical

6    treatment for a mental or emotional problem but had only obtained medical coverage about a year

7    ago, had just begun seeing doctors, and was being treated for newly discovered problems,

8    including diabetes, high blood pressure, and high cholesterol.  (Tr. at 471.)  The court finds that

9    plaintiff's failure to diagnose herself as depressed and her subsequent failure to seek treatment

10   for depression once diagnosed do not justify rejection of the limitations assessed by Dr. Kalman.

11       It is, of course, well established that "'[t]he ALJ is responsible for determining

12   credibility and resolving conflicts in medical testimony.'"  Saelee v. Chater, 94 F.3d 520, 522

13   (9th Cir. 1996) (quoting Magallanes, 881 F.2d at 752).  Thus, where a physician's opinion is

14   solicited by the claimant's counsel, that fact may be used in conjunction with other evidence in

15   the record as a ground for questioning the physician's credibility and for disregarding  his

16   opinions.[6]  Id. at 523.  In this case, however, the ALJ has not used the fact that Dr. Kalman's

17   opinions were solicited by plaintiff's counsel in conjunction with any other evidence in the

18   /////

19

---

20       [6]  In Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988), the Ninth Circuit permitted an
ALJ to question a doctor's credibility where the doctor's opinion had been solicited by the
21   claimant's counsel.  Saelee, 94 F.3d at 522-23.  The court in Burkhart reasoned that the ALJ's
comment regarding the doctor's opinion was "a permissible credibility determination given the
22   evidence before the ALJ."  856 F.2d at 1339.  More recently, the Ninth Circuit stated in Lester
that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for
23   rejecting them."  81 F.3d at 832.  As noted in Saelee, Lester could not supersede the law
established in Burkhart because only a panel sitting en banc may overturn Ninth Circuit
24   precedent.  94 F.3d at 523.  Thus, the decisions in Burkhart and Lester can be reconciled as
holding that, where a physician's opinion is solicited by plaintiff's counsel, that fact may be used
25   in conjunction with other evidence in the record to question the physician's credibility and
disregard his opinions, but may not be relied upon as the sole reason for rejecting the physician's
26   opinion as it was here.

1   record to question the limitations assessed by the examining psychiatrist, since no evidence of

2   actual improprieties or any other evidence has been introduced.  See Lester, 81 F.3d at 832.

3          As set forth fully supra, "[t]o reject the uncontradicted opinion of a treating or

4   examining doctor, an ALJ must state clear and convincing reasons that are supported by

5   substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81

6   F.3d at 830-31).  Here, the ALJ rejected Dr. Kalman's uncontradicted opinions regarding

7   plaintiff's mental impairments without stating clear and convincing reasons for doing so.  Dr.

8   Kalman's opinions are based on his examination of plaintiff as well as a review of objective

9   medical data and the reports of the physicians who treated plaintiff's physical impairments.  Cf.

10  Bayliss, 427 F.3d at 1217 (affirming ALJ's rejection of psychological assessments by doctors

11  who did not review objective medical data or reports from treating physicians or counselors and

12  based their opinions solely on the claimant's complaints and information from her family,

13  friends, and a former counselor).

14         The court finds that the ALJ failed to articulate proper reasons for not crediting

15  Dr. Kalman's uncontroverted opinions.  Plaintiff is entitled to summary judgment on this claim.

16  On remand, the ALJ must reconsider Dr. Kalman's opinions and either credit them or articulate

17  proper reasons for rejecting them.

18  **III.  ALJ's Failure to Find Plaintiff's Cervical Spine Condition a Severe Impairment**

19         At step two of the sequential evaluation process, the ALJ must determine if the

20  claimant has a medically severe impairment or combination of impairments.  Smolen, 80 F.3d at

21  1289-90 (citing Yuckert, 482 U.S. at 140-41).  Under the Commissioner's regulations, "[a]n

22  impairment or combination of impairments is not severe if it does not significantly limit [the

23  claimant's] physical or mental ability to do basic work activities."[7]  20 C.F.R. § 416.921(a).  The

24

25         [7] Basic work activities encompass "the abilities and aptitudes necessary to do most jobs,"
    including (1) physical functions such as walking, standing, sitting, lifting and carrying, (2)
26  capacities such as seeing, hearing, and speaking, (3) understanding, carrying out, and
    remembering simple instructions, (4) use of judgment, (5) responding appropriately to

severity regulation serves to "identify[] at an early stage those claimants whose medical

impairments are so slight that it is unlikely they would be found to be disabled even if their age,

education, and experience were taken into account." <u>Yuckert</u>, 482 U.S. at 153.  "Step two, then,

is 'a de minimis screening device [used] to dispose of groundless claims[.]'"  <u>Webb v. Barnhart</u>,

433 F.3d 683, 687 (9th Cir. 2005) (quoting <u>Smolen</u>, 80 F.3d at 1290).  <u>See</u> <u>also</u> <u>Edlund v.</u>

<u>Massanari</u>, 253 F.3d 1152, 1158-59 (9th Cir. 2001).  "An impairment or combination of

impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that

has no more than a minimal effect on an individual's ability to work.'"  <u>Webb</u>, 433 F.3d at 686

(quoting <u>Smolen</u>, 80 F.3d at 1290, and adding emphasis).

       Here, the treating physicians' records and the evaluations of examining physicians

who reviewed the record reflect that as early as September 24, 1997, an MRI scan of plaintiff's

cervical spine showed a right posterolateral C6-7 bulge extending to and threatening the right

anterolateral margin of the adjacent cord (tr. at 158).  In 1999, Dr. Porecha diagnosed a cervical

disc bulge at the C6-7 level and noted treatment of plaintiff with cervical traction.  (Tr. at 153-

69.)  In May 2000 Dr. Westin diagnosed cervical arthrosis.  (Tr. at 280.)  An MRI scan of

plaintiff's cervical spine on September 20, 2002, showed loss of height of discs throughout the

mid and lower cervical region, most prominently at C5-6 and C6-7, moderate uncinate

hypertrophy from C3 through C7, mild broad-based bulges of the discs at multiple levels, and

mild narrowing of the right C5-6 neural foramen, leading to an impression of moderate cervical

spondylosis.  (Tr. at 356.)  In his November 4, 2002 report as a Qualified or Agreed Medical

Evaluator, Dr. Porecha diagnosed cervical sprain/strain, found deterioration in plaintiff's

condition, and concluded that, among other preclusions, plaintiff's cervical pain should preclude

her from repetitive flexion/extension of the neck.  (Tr. at 328, 330.)  On August 2005, Dr.

/////

supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine
work setting.  20 C.F.R. § 416.921(b).

1 McIntire diagnosed probable mild degenerative osteoarthritis of the cervical and lumbar spine

2 and noted mild diffuse tenderness on palpation of the cervical region.  (Tr. at 356.)

3       Substantial evidence in the record therefore supports a determination that plaintiff

4 has a medically determinable spine impairment that constitutes more than a slight abnormality

5 and has more than a minimal effect on her ability to perform basic work activities.  On this

6 record, the court finds that the ALJ erred when he failed to find that plaintiff's degenerative disc

7 disease of the cervical spine is a severe impairment at step two of the sequential evaluation

8 process.  Plaintiff is entitled to summary judgment on this claim as well.

9 **CONCLUSION**

10       The court will remand the matter for further administrative proceedings consistent

11 with this order.  See Widmark v. Barnhart, 454 F.3d 1063, 1065 (9th Cir. 2006) (reversing and

12 remanding for proceedings consistent with the court's decision that the ALJ improperly rejected

13 the examining physician's opinion).  Remand is required so that the ALJ can give proper credit to

14 the opinions of treating and examining sources after obtaining new orthopedic and neurologic

15 opinions by an examining physician who has reviewed the complete medical record.  Remand is

16 also required so that the ALJ can reconsider Dr. Kalman's opinions and either credit the

17 limitations assessed by Dr. Kalman or articulate proper reasons for rejecting them.  Finally,

18 remand is required so that the ALJ can include plaintiff's degenerative disc disease of the

19 cervical spine condition as a severe impairment at step two of the sequential evaluation process

20 and give the impairment proper consideration at the remaining steps.[8]

21 /////

22 /////

23

24     [8] The record in these areas has not been thoroughly developed and further administrative

25 proceedings will allow for that development.  See Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly

26 developed.").

1              In accordance with the above, IT IS HEREBY ORDERED that:

2              1.  Plaintiff's December 28, 2008 motion for summary judgment (Doc. No. 20) is

3  granted;

4              2.  Defendant's January 28, 2009 cross-motion for summary judgment (Doc. No.

5  22) is denied;

6              3.  The decision of the Commissioner of Social Security is reversed; and

7              4.  This case is remanded for further proceedings consistent with this order.

8  DATED: September 29, 2009.

9

10

11                              DALE A. DROZD
                              UNITED STATES MAGISTRATE JUDGE

12  DAD:kw
    Ddad1/orders.socsec/laniohan0738.order

13

14

15

16

17

18

19

20

21

22

23

24

25

26